1                    UNITED STATES DISTRICT COURT

2                     DISTRICT OF MASSACHUSETTS

3                              No. 1:07-cv-11469-MLW

4

5
    LYCOS, INC.,
6              Plaintiff

7
    vs.
8

9
    NETFLIX, INC. and BLOCKBUSTER, INC.,
10             Defendants

11

12                         * * * * * * * * *

13
                        For Hearing Before:
14                    Chief Judge Mark L. Wolf

15
                      Summary Judgment Motions
16
                        Judge's Ruling
17

18                  United States District Court
                    District of Massachusetts (Boston)
19                  One Courthouse Way
                    Boston, Massachusetts 02210
20                  Tuesday, June 16, 2009

21                         * * * * * * * *
22

23              REPORTER: RICHARD H. ROMANOW, RPR
                     Official Court Reporter
24                 United States District Court
        One Courthouse Way, Room 5200, Boston, MA 02210
25                  bulldog@richromanow.com

```
1                  A P P E A R A N C E S

2


3   SARAH CHAPIN COLUMBIA, ESQ.
    MATTHEW E. LENO, ESQ.
4      McDermott, Will & Emery, LLP
       28 State Street
5      Boston, Massachusetts 02109
       (617) 535-4074
6      Email: Scolumbia@mwe.com
       For Plaintiff
7


8   DARREN E. DONNELLY, ESQ.
    LYNN H. PASAHOW, ESQ.
9      Fenwick & West, LLP
       Silicon Valley Center
10     801 California Street
       Mountain View, California 94041
11     (650) 988-8500
       Email: Ddonnelly@fenwick.com
12     For Defendant Netflix, Inc.

13
    MICHAEL E. ZELIGER, ESQ.
14  JEFFREY L. SNOW, ESQ.
       Kirkpatrick & Lockhart Preston Gates Ellis, LLP
15     State Street Financial Center
       One Lincoln Street
16     Boston, Massachusetts 02110-2950
       (617) 261-3175
17     Email: Michael.zeliger@klgates.com
       For Defendant Blockbuster, Inc.
18

19

20

21

22

23

24

25
```

1                    P R O C E E D I N G S

2              (Begins, 1:45 p.m.)

3              THE CLERK:  Civil Action 07-11469, Lycos,

4    Incorporated versus Netflix, Incorporated, et al.  The

5    Court is in session.  You may be seated.

6              THE COURT:  Good afternoon.  Would counsel

7    please identify themselves for the record.

8              MS. COLUMBIA:  Sarah Columbia and Matthew Leno

9    for the plaintiffs, your Honor.

10             MR. ZELIGER:  Michael Zeliger and Jeffrey Snow

11   for Blockbuster, your Honor.

12             MR. PASAHOW:  Lynn Pasahow and Darren Donnelly

13   for Netflix.  Good afternoon, your Honor.

14             THE COURT:  I told you, when we broke

15   yesterday, as I had told you before, that it was my goal

16   to give you a decision on the motions for summary

17   judgment orally.  With considerable assistance from my

18   law clerk, Mr. Brown, I continue to work toward that

19   goal and will do that now.

20        The transcript will be at least one and perhaps

21   the only record of the decision.  I will get the

22   transcript and correct any errors or misunderstandings

23   by the stenographer.  If there's going to be any appeal,

24   I may also convert the transcript, or a pertinent part

25   of the transcript, into a more formal memorandum and

1    order, without, of course, altering the transcript.

2        For reasons that I will describe in detail, I'm

3    granting Netflix's motion for summary judgment with

4    regard to both the '799 and '214 patents.  In addition,

5    I'm granting Blockbuster's motion for summary judgment

6    with regard to the '799 patent.  I'm denying the motion

7    for summary judgment with regard to the '214 patent.

8        As those conclusions indicate, I was persuaded by

9    the argument yesterday concerning the proper

10   construction of "network" and whether the '799 patent

11   requires taking so-called "informons" off the Internet

12   or some other streaming large-scale wide area network.

13   However, I'll do my best to explain this in detail.

14       This is a patent infringement case initially

15   brought in the Eastern District of Virginia by

16   Lycos, Inc. against Tivo, Inc., Netflix and

17   Blockbuster, Inc.  Lycos alleges that the defendants'

18   respective software and systems for recommending TV

19   shows and/or movies to customers infringed two Lycos

20   patents, Patent Number 5,867,799, which I'll call the

21   '799 patent, and Patent Number 5,983,214, which I will

22   refer to as the '214 patent.

23       Tivo settled the case against it.  This case was

24   transferred to the District of Massachusetts because

25   ChoiceStream, Inc., which provides software and services

1    to Blockbuster, brought an action in Massachusetts

2    seeking a declaratory judgment that its technology did

3    not infringe Lycos's patents.  The Lycos versus Tivo

4    case was transferred here so that it could be tried

5    together with the ChoiceStream case.  However,

6    ChoiceStream subsequently voluntarily dismissed its

7    case.

8         At a September 10, 2008 scheduling conference,

9    Netflix and Blockbuster represented that three limited

10   issues of claim construction and fact would either

11   resolve the case in their favor or materially improve

12   the chances of settlement.  Therefore, I ordered that

13   the defendants file supplemental briefs fully specifying

14   their defenses based on these three limited issues.

15   Lycos filed infringement contentions under the Doctrine

16   of Equivalents as well as revising its previously-stated

17   contentions of literal infringement, with regard to the

18   limited issues, and I established a briefing schedule

19   for the summary judgment motions.  I also scheduled a

20   joint technical tutorial which was held on April 27th,

21   2009.

22        The defendants each filed a motion for summary

23   judgment focusing on the three issues identified in the

24   September 10, 2008 conference.  These issues are whether

25   Lycos's claims under the '214 patent require that the

accused systems generate an output rating predictor of
an informon for consideration by the user.  Second,
whether Lycos's claims under the '799 patent require
accused systems to filter data that passes over a
network, such as the Internet, to obtain what Lycos's
patents call "informons."  And third, whether Lycos's
claims under the '799 and '214 patents require the
accused systems to utilize an integrated combination of
a content-based information filter and a collaboration-
based filter and to use this combination to determine a
value of the informon to the individual user.

For reasons I will describe in detail, Netflix is
entitled to summary judgment regarding both the '799 and
the '214 patents.  The undisputed facts demonstrate that
it does not infringe either patent literally or under
the Doctrine of Equivalents because Netflix does not
calculate a number based on the combined content and
collaborative data or functions and it does not filter
informons received from a network such as the Internet.
Therefore, final judgment will enter for Netflix
pursuant to Federal Rule of Civil Procedure 54(b).

Blockbuster's motion for summary judgment is being
allowed with regard to the '799 patent because the
undisputed facts show that the Blockbuster system does
not filter informons received directly from the Internet

or any comparable large-scale wide area network in a
real time data stream.  Blockbuster's motion for summary
judgment regarding the '214 patent is being denied
because -- as it acknowledges at least for present
purposes, Blockbuster combines collaborative filtering
and content-based filtering to generate a value and on
the basis of that value, or rating predictor, provides,
for consideration by the user, what the '214 patent
defines as an "informon," in this case the name and
related information about movies that Blockbuster
recommends to the user.  Under my construction, the
claim term "generate an output rating predictor of the
informon for consideration by the user" does not require
that the rating, the numerical rating, be disclosed to
the user, rather only the informon must be provided for
consideration by the user.

          The summary judgment standard is familiar.
Motions for summary judgment are governed by Rule 56.
It provides, in pertinent part that a court may grant
summary judgment only if "The pleadings, depositions,
answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the
moving party is entitled to judgment as a matter of
law."  "Summary judgment is as appropriate in a patent

1   case as in any other," as the Federal Circuit wrote in

2   *Avia Group*, 853 F.2d 1557 to 1561.

3           The facts must be viewed in the light most

4   favorable to the nonmoving party.  When a party fails to

5   make a showing sufficient to establish the existence of

6   an essential element of that party's case and on which

7   that party bears the burden of proof at trial, there can

8   no longer be a genuine issue as to any material fact and

9   the moving party is entitled to judgment as a matter of

10  law.  More specifically, as the Federal Circuit has

11  explained, to support a summary judgment of

12  noninfringement it must be shown that on the correct

13  claim construction no reasonable jury could have found

14  infringement on the undisputed facts or when all factual

15  inferences are drawn in favor of the patentee.

16          As I think the parties essentially agree, as I

17  find, there are no material facts in dispute.  The key

18  issues for resolving the motions for summary judgment

19  are issues of claim construction.  Viewed in the light

20  most favorable to Lycos, the key facts are as follows.

21          Lycos alleges that both Netflix and Blockbuster

22  have infringed two patents it holds, the '799 patent and

23  the '214 patent.  Both of these patents disclose systems

24  for filtering information entities called "informons" to

25  predict how they will be rated by a particular user.

1    The inventors coined the term "informon" to describe the

2    objects filtered by the system.

3        As described in the specification of the '799

4    patent, quote:  "The term 'informon' comprehends an

5    information entity of potential or actual interest to a

6    particular user.  In general, informons can be

7    heterogeneous in nature and can be all or part of a

8    textual, a visual, or an audio entity.  Also informons

9    can be composed of a combination of the aforementioned

10   entities thereby being a multimedia entity."  Among

11   other things, an informon includes the title of a movie

12   or the title of a movie and some additional information

13   such as the year that it was made and the actors who

14   performed in it.

15       The most significant feature of both patents is

16   their combination of two methods for filtering

17   information, content-based and collaboration-based

18   filtering.  In general terms, content-based filtering

19   operates by characterizing the content of the items of

20   information in terms of a set of features or

21   characteristics that are descriptive of the information

22   item's content.  For example, a characterization of a

23   movie as a comedy would be content based.

24       In contrast, collaborative filtering is

25   indifferent to the content of the objects or items of

1    information being filtered.  It relies instead on the

2    opinions of others about those objects or items of

3    information.  Collaborative filtering relies on the

4    principle that if two people tend to rate the same items

5    similarly, if the first person rates a new item highly,

6    that item is a good candidate to suggest to the second

7    person.  Similarly, if people who rate one item highly

8    tend to rate another item highly, then if a user rates

9    the first item highly, he or she would likely rate the

10   second item highly as well.  These principles can be

11   applied without knowing the particular items in question

12   -- without knowing what the particular items in question

13   are and is indifferent to their content.  People who

14   like a movie based on the novel "Moby Dick" also like

15   the new Jim Carrey comedy even though they are entirely

16   different in content.

17        In the '799 patent, the inventors acknowledged

18   that both methods of filtering were used in the prior

19   art.  However, they argued to the PTO that in each case

20   the collaborative and content-based aspects of

21   information filtering are not integrated.  In an

22   amendment to the '799 patent, the inventors argued that

23   it was their combination of these two methods of

24   filtering information that rendered the process

25   patentable.  They stated:  "Claim 71 defines a filter

structure having content based and collaboration filters
respectively, having content profile data and
collaboration data.  The filter structure integrates the
operation of the filters by combining all of the data
together in determining a value of an informon to a
user.  In so defining the integrated content-
based/collaboration filter feature of the invention,
Claim 71 differs patentably from the cited references."

The Netflix system uses a program called
"Cinematch."  Netflix uses only a collaborative-
filtering approach to determine predicted ratings for
each movie for individual customers using a program
called "ItemSimilarity."  After the rating for the movie
is computed by the collaborative filtering, the movie is
subject to a content-based screening process called
"IsOk", which determines whether there is a content
reason that the movie should not be recommended to the
user.  For example, if the movie is R rated and the user
is only supposed to receive PG-rated films.  This
content filtering does not alter the predictive value
established by the collaborative filtering process.

A Netflix movie catalog database contains records
that are generated manually by Netflix employees in a
multi step process that can take several days or even
weeks.  New database records are accessed by the site

1    content group through a software tool called "The New

2    Abyss."  In order to find the information corresponding

3    to the fields for a movie record in The New Abyss site,

4    content coordinators research the movie.  Each

5    coordinator has a spreadsheet of sources and contacts,

6    for example, a movie studio contact, from which they can

7    obtain information about the movie to include in the

8    movie's database record.  Such information may include

9    the movie's director, actors, genres, the Motion Picture

10   Association of America ratings, and the date of release,

11   and this information is manually entered into the

12   database record using The New Abyss tool.  Netflix does

13   not employ any software or system to automatically

14   collect and enter this information from any electronic

15   source.

16        Netflix obtains some information about movies from

17   the "All Movie Guide," or AMG, an Internet database.

18   However, the data Netflix receives from AMG is limited

19   to a set of descriptions about the movie.  Netflix does

20   not derive the genre classification, or MPAA ratings,

21   for its movie catalog from this data.  In addition, some

22   Netflix employees work off site and use the Internet to

23   access the database and enter information into it.

24        With regard to the Blockbuster system, for present

25   purposes, which Blockbuster -- well, Blockbuster agrees

1    that the Court should assume as true that Blockbuster

2    uses a combination of collaborative-based filtering and

3    content-based filtering to develop a value on which it

4    bases the recommendations concerning movies it makes to

5    its users.  Blockbuster does not, however, disclose that

6    value or number to the user.  Rather, Blockbuster just

7    provides to the user the name and related information of

8    the movies it is recommending.

9         More specifically, the accused Blockbuster system

10   provides recommendations of movie titles to users of

11   Blockbuster's on-line DVD movie rental service.  When a

12   user signs up for the Blockbuster service, he enters

13   certain personal information relating to his demographic

14   group, for example, his age and general movie

15   preferences, and then every time the user employs the

16   service, Blockbuster presents him with a list of

17   recommended movie titles that he may also be interested

18   in renting.

19        Blockbuster is a client of ChoiceStream.

20   ChoiceStream uses its Real Relevance Personalization

21   Platform to perform calculations for producing a list of

22   recommended movie titles provided to Blockbuster's

23   customers on its website.  ChoiceStream obtains the

24   movie titles that can be used in recommendations

25   provided to users directly and solely from Blockbuster.

1   That is, Blockbuster provides the list of movie titles

2   in its current rental library to ChoiceStream.  These

3   movie titles are provided in the form of a text file on

4   a daily basis.  They're later integrated into a file

5   format called an IDX file, which is static -- which is a

6   static indexed database-type file from which

7   recommendations are generated.  The list of available

8   movie titles is stored in a database-like structure

9   called an IDX file and is not obtained in realtime over

10  a network.

11      Neither Blockbuster nor ChoiceStream obtain any

12  information about the movie titles by analyzing the

13  movie lists of Blockbuster's current inventory or from

14  the movies themselves.  That is, no content relating to

15  the movie titles is obtained from the movie list

16  provided by Blockbuster or the movies themselves.

17      ChoiceStream obtains information about each of the

18  movies from another source called the "All Movie Guide"

19  or, as I think I said, AMG.  ChoiceStream uses this

20  information as well as information entered by

21  ChoiceStream and information acquired from the user and

22  other customers of Blockbuster to perform a calculation

23  that results in a ranked list of movie recommendations

24  for the user.  ChoiceStream provides Blockbuster with

25  the ranked list of movie titles only and does not

1  provide the actual calculated values.

2        Blockbuster then displays a group of recommended

3  movies to the user.  Neither ChoiceStream nor

4  Blockbuster provides any calculated values of the movies

5  to the user.  Based on the presentation of the movies to

6  the user, the user is unable to determine which are

7  ranked more highly.

8        The generally applicable patent law emerges from

9  many cases.  The parties and the court agree that one

10  that's particularly helpful in providing the framework

11  is *Phillips vs. AWH Corporation*, 415 F.3rd 1307, a 2005

12  Federal Circuit case.

13        It is a bedrock principle of patent law that the

14  claims of a patent define the invention to which the

15  patentee is entitled to the right to exclude.  The claim

16  construction inquiry therefore begins and ends in all

17  cases with the actual words of the claim.  Those words

18  are generally given their ordinary and customary meaning

19  as construed by a person of ordinary skill in the art in

20  question at the time of the invention.

21        While the language of a claim is the starting

22  point of the claim construction analysis, the person of

23  ordinary skill in the art is deemed to read the claim

24  term not only in the context of the particular claim in

25  which the disputed term appears, but in the context of

the entire patent, including the specification.  The
specification is always highly relevant to the claim
construction analysis.  Usually it is dispositive.  It
is the single best guide to the meaning of a disputed
term.  Essentially all of that comes from **Phillips**.

Two interpretive principles guide reliance on the
specification.  The Court generally may not read a
limitation into a claim from the written description.
However, the Court can generally look to the written
description to interpret a term already in a claim
limitation which requires definition.

When a patentee acts as a lexicographer, the
patentee's definition of a term governs.  Furthermore,
the written description can provide guidance to the
meaning of the claims, thereby dictating the manner in
which the claims should be construed even if the
guidance is not provided in explicit definitional
format.  Thus, when a patentee uses a claim term
throughout the entire patent specification in a manner
consistent with only a single meaning, he has defined
that term by implication.  However, when relying on the
specification in this way, there must be a textual
reference in the actual language of the claim with which
to associate the proffered claim construction.

In addition to consulting the specification, the

1    Court should also consider the patent's prosecution

2    history, if it is in evidence, as it is in this case.

3    However, because the prosecution history represents an

4    ongoing negotiation between the PTO and the applicant,

5    rather than the final product of that negotiation, it

6    often lacks the clarity of the specification and thus is

7    less useful for claim construction purposes.

8    Nonetheless, the prosecution history can often inform

9    the meaning of the claim language by demonstrating how

10   the inventor understood the invention and whether the

11   inventor limited the invention in the course of the

12   prosecution, making the claim scope narrower than it

13   otherwise would be.

14        The Court can also rely on extrinsic evidence,

15   such as expert and inventor testimony.  However, such

16   evidence is less significant than intrinsic evidence,

17   which is what a person ordinarily skilled in the art

18   would have available in determining what was protected

19   by the patent and what was still left open for

20   innovation.

21        Regarding the Doctrine of Equivalents, the Federal

22   Circuit has explained recently in **Crown Packaging**, 559

23   F. 3rd 1308 at 1312, that:  "A finding of infringement

24   under the Doctrine of Equivalents requires a showing

25   that the difference between the claimed invention and

1    the accused product is insubstantial.  One way of doing

2    so is by showing on a limitation-by-limitation basis

3    that the accused product performs substantially the same

4    function in substantially the same way with

5    substantially the same result as each claim limitation

6    of the patented product."

7         The Doctrine of Equivalents allows the patentee to

8    claim those insubstantial alterations that were not

9    captured in drafting the original patent claim, but

10   which could be created through trivial changes, as the

11   Supreme Court said in *Festo*, 535 U.S. 722 at 733.

12        Lycos alleges that Netflix infringes four

13   independent claims of the '799 patent, Claim 71, 94,

14   124, and 128.  All four of those independent claims

15   include the phrase, quote, "determine a value," end

16   quote, or "determining a value," end quote.

17        The Court construes each of these terms to require

18   that the system calculate a number based on the combined

19   integrated content and collaborative data or functions.

20   All of the embodiments and examples offered in both

21   patents involve numerical calculations.  In addition,

22   the prosecution history, which to some extent is shared

23   because the '214 is a continuation of the '799 patent,

24   includes numerous statements suggesting that the two

25   filters must be combined in a numerical calculation, as

1    indicated in the prosecution history of the '799

2    amendment at 59 and 65 to 66.  Accordingly, the terms

3    are construed to require that the system combine the two

4    types of filtering in a numerical calculation.

5         Claim 71, for example, states, with regard to the

6    relevant limitation:  "The filter structure integrating

7    the operation of the content-based and collaboration

8    filters by combining the informon-profile data, the

9    content profile data, and the collaboration data

10   together and determining a value of the informon to the

11   individual user."

12        Claim 24 -- I'm sorry.  Claim 124 states, in

13   pertinent part:  "Processing in combination the informon

14   profile data, the content profile data, and the

15   collaboration data to determine a value of the current

16   informon relative to the information desired by the

17   individual user."

18        The language of the claims alone is not the end of

19   the inquiry concerning their construction.  The phrase

20   "determining a value" does not have an ordinary and

21   customary meaning.  The intrinsic evidence, however, is

22   consistent and consistent with the construction I have

23   given to this term.  All of the possible embodiments

24   described in the specification are mathematical

25   functions to be applied to a set of numerical inputs to

1    produce a numerical result.

2         I note, for example, Column 13, Lines 4 to 14.

3    Column -- well, we'll add the cites for you.

4    Furthermore, all of the examples included in the patents

5    are numerical.  The pertinent part of the prosecution

6    history would also communicate the same thing to one

7    skilled in the art.

8         The '799 amendment states that:  "Generally the

9    information processing system routes informons

10   designated to an individual user for storage in a

11   prioritized list belonging to that user with priority

12   based on numerical value ratings output."  It also

13   states that:  "The invention integrates, or links,

14   content and collaborative filtering to develop a

15   predicted value, a numerical rating for an informon

16   being processed for an individual user."  Accordingly,

17   the prosecution history also supports the construction

18   of the term "determine a value" that I have made.

19        The inventors clearly communicated to the Patent

20   and Trademark Officer, or PTO, and those reasonably

21   skilled in the art, that it was the integration of the

22   collaborative and content-based filtering that made

23   their system patentable over the prior art.

24        The specification of the '799 patent describes

25   existing applications of content based and

collaboration-based filtering and then goes on to state
that: "In each case, the collaborative and content-
based aspects of information filtering are not
integrated." Clarifying the scope of their claims after
the application was originally rejected, the inventors
stated that Claim 71 defines a filter structure having
content based and collaboration filters respectively,
having content profile data and collaboration data. The
filter structure integrates the operation of the filters
by combining all of the data together and determining a
value of the informon to a user. In so defining the
integrated content-based/collaboration filter feature of
the invention claim, 71, differs patentably from the
cited references.

The court recognizes that the prosecution history
contains a discussion of what emerged as Claim 110
concerning a filter to block pornography that
included -- that includes broader language. However,
that claim is not at issue on this motion for summary
judgment. Lycos does not assert that Claim 110 is
infringed.

Netflix does not literally infringe Claim 71, 94,
124 or 128 because the undisputed material facts show
that it does not combine content based and collaborative
filtering to determine a value.

1           As I said earlier, "determine a value," in the

2     context of the '799 patent, is construed to mean that

3     the content and collaborative filters are combined in a

4     numerical calculation to yield a numerical value to the

5     user.  This does not occur in the Netflix system.

6     Rather, the Netflix system calculates a value through

7     the use of a collaboration-based filter alone, the

8     ItemSimilarity function.

9           The content-based IsOk filter removes certain

10    movies from the list recommended to the user, but does

11    not in any way alter or affect the rating calculated by

12    the ItemSimilarity function.  Accordingly, the function

13    of the filters is not combined in the calculation of the

14    value of each movie to the user.  The value of the movie

15    to the user is calculated by the use of a collaboration-

16    based ItemSimilarity algorithm alone.  And the IsOk

17    filter decides whether to pass that rating to the user.

18          Lycos argues that there is an issue of fact as to

19    whether the ItemSimilarity calculation is performed

20    before or after the IsOk function.  However, this issue

21    is not material.  Whether it was performed before or

22    after the ItemSimilarity calculation, the IsOk function

23    is not integrated with that collaboration-based filter

24    in determining the value of the informon.

25          Lycos also argues that there's a material issue of

 1   fact as to whether the IsOk filter uses numerical

 2   representations, 1 and 0, of its true/false -- true and

 3   false outputs.  Lycos states that it was unable during

 4   discovery to obtain information about the representation

 5   of the IsOk outputs.  However, this argument is not

 6   material.  When dealing with Boolean data types, those

 7   having two values, true and false, like the output of

 8   the IsOk filter, the results can be represented by 1 and

 9   0.  However, it would be incorrect to find that the

10   application of a binary true/false pass/fail filter such

11   as this results in the calculation of a new value of an

12   informon.  A binary pass/fail filter like the IsOk

13   function does not contribute in determining the value of

14   the informon to the user.  Rather, it determines whether

15   the value calculated by the collaboration-based

16   ItemSimilarity function will be passed on to the user.

17   In the Netflix system it's passed on as a number of

18   stars.

19       Netflix also does not infringe the "determine a

20   value" limitation under the Doctrine of Equivalents.  In

21   this case, Lycos argues that Netflix violates the '799

22   patent under the Doctrine of Equivalents, because

23   calculating a value of a movie to a user based on an

24   application of the true or false designations of IsOk as

25   well as a numerical value assigned by Cinematch is

1   insubstantially different, if different at all, from

2   calculating that value based on a combined content and

3   collaboration-based value.  Lycos asserts that this is

4   true because -- Lycos asserts that this is because true

5   and false are insubstantially different from 1 and 0 in

6   the context of the system.

7       However, for much the same reason previously

8   described concerning literal infringement, this argument

9   is not meritorious.  The consecutive application of a

10  collaboration-based function determining a value and a

11  content-based binary true/false, pass/fail filter does

12  not result in an integrated calculation of the value of

13  an informon to a user.  The two systems are

14  substantially different.

15      The motion for summary judgment concerning the

16  '799 patent also requires the Court to construe the term

17  "network."  This issue relates to the motions for

18  summary judgment of both Netflix and Blockbuster.

19      "Network" is used in each of the independent

20  claims in the '799 patent at issue.  For example, Claim

21  71 is representative.  With regard to this limitation it

22  states:  "A filter structure having a content-based

23  filter and being arranged to process an informon

24  received from the network and to generate informon

25  profile data representing information in the informon."

1          The Court construes "network" to mean "Internet or

2     other large-scale wide area network."  The inventors

3     explicitly define "network" as "global internetwork" or

4     "Internet" in the specification.  That's in Column 1,

5     Lines 17 to 21.  This definition is repeated in the

6     prosecution history, for example, in the '799 amendment

7     at Page 44.  When the inventor acts as his own

8     lexicographer, his definition of a claim term governs,

9     as Federal Circuit reminded in *Phillips* at 1316.

10         As I said, the term "network" appears in every

11    asserted independent claim of the '799 patent.  In each

12    of the four claims, it is used similarly, appearing once

13    in the preamble and once in the body of the claim.

14    Netflix and Blockbuster argue that the term "network"

15    requires that informons be received from the Internet in

16    a realtime data stream and does not include receiving

17    informons from a database.  Lycos argues that none of

18    this is required and that "network" requires nothing

19    more than a collection of computers connected to each

20    other for communicating information.

21         Contrary to Lycos's assertion, the term "network"

22    is a limitation of all the asserted independent claims.

23    The first use of the term in the preamble of each claim

24    does not necessarily impose a limitation, I understand,

25    based in part on the Federal circuit's decision in

*Symantec*, 522 F. 3rd 1279 at 1288.  However, the second use of the term in the body of each claim does impose a limitation.

While it is true that the language of Claim 128 is more explicit, containing a separate method step of receiving informons from a network, the term "network" is an important part of the language of the other claims as well.  As noted earlier in the recited claim language, each of the claims states that the filter structure described processes "informons received from the network."  That's a quote, "informons received from the network," end quote.

There's a fundamental cannon of claim construction that it should be assumed that every term in a claim has meaning.  The Federal Circuit has said that, for example, in *Merck*, 395 F. 3rd 1364 at 1372. Accordingly, the term "network" must be accorded some meaning.

Lycos argues that the claims only require a system capable of receiving informons from a network.  However, this interpretation is not supported by the claim language, which includes no such modifier.  Each of the claims state that the process or method described involves processing informons received from the network.  Therefore, the claims are unambiguously

1    limited to exclude those systems that process informons

2    which are not received from a network.

3        "Network" was defined by the inventors in the

4    specification to mean "Internet."  In the second

5    paragraph of the specification, the inventors noted

6    that, quote:  "Hundreds of thousands of news articles

7    stream through the global Internetwork each day and the

8    total number of files transferred through the global

9    internetwork, hereinafter, quote, 'network,' end quote,

10   is in the millions."  End of complete quote.

11       It is a rule of claim construction that when an

12   inventor acts as a lexicographer, defining claim terms

13   in the specification, the inventor's definition

14   governs.  In the prosecution history, the inventors

15   again define "network" to mean "Internet."  In the '799

16   Amendment, the inventors stated that:  "A need exists in

17   information processing networks for advanced information

18   filtering.  This need is especially evident in the case

19   of the Internet, which is referred to as the network in

20   the specification."  That's at Page 44 of the

21   prosecution history of the '799 Amendment.

22       This definition of "network" as "Internet" is

23   consistent with the references in the specification to

24   "data passing over a network as a data stream,"

25   distinguishing it from a "database."  The inventors

1    stated:  that "although databases are relatively static

2    and can be searched using conventional network search

3    engines, current information filtering systems" --

4    "current information filtering schemes are ill-suited to

5    thoroughly search the massive dynamic stream of new

6    information passing through the network each day."  The

7    inventors also stated that:  The invention is embodied

8    in "an apparatus or method for information filtering in

9    a computer system receiving a data stream from a

10   computer network, in which entities of information

11   relevant to the user, or 'informons,' are extracted from

12   the data stream using content-based and collaborative

13   filtering."

14        In the prosecution history, the inventors also

15   distinguished the invention from the prior art, which

16   filtered information stored in a database.  The

17   inventors described the Goldberg reference, in which

18   they stated:  "Incoming documents are indexed into a

19   database as opposed to being directly processed in real

20   time, as in the invention, through a filter structure to

21   users."  They went on to describe the Sheth, S-H-E-T-H,

22   reference which, in their words, "stores documents in a

23   database and uses the conventional key-word approach as

24   a basis for filtering documents from the database."  In

25   contrast, they stated:  "The invention avoids storing

1    documents for filtering from a database and instead

2    filters incoming documents in real time."

3         The Court does not regard the statements just

4    referenced in the prosecution history as disavowals of

5    database filtering.  They're not sufficiently clear and

6    unequivocal for that purpose.  I have the decision in

7    *SanDisk*, 415 F. 3rd 1278 at 1286 in mind.  However, even

8    if not an express disavowal, the statements

9    distinguishing the invention from the prior art on the

10   basis of the earlier systems' reliance on databases adds

11   weight to the arguments of Netflix and Blockbuster that

12   construction of "network" -- that "network" should be

13   construed to require a realtime data stream such as the

14   Internet.  As the Federal Circuit noted in *Phillips*, the

15   prosecution history can often inform the meaning of the

16   claim language by demonstrating how the inventor

17   understood the invention.

18        Similarly, the statement in the summary of

19   invention -- well, one particular statement in the

20   summary of invention that was referenced at the hearing

21   yesterday, does not alter the Court's construction of

22   "network."  The summary states that:  "The invention

23   herein provides a method for information filtering in a

24   computer system receiving a data stream from a computer

25   network.  This description is consistent with the

1    Internet or some other large scale wide area network

2    capable of streaming data.  It is not consistent with a

3    static database."

4         The undisputed facts show that Netflix does not

5    infringe the '799 patent, with regard to the use of the

6    network, literally.  The Netflix system does not filter

7    informons received from a network as required by each of

8    the independent claims of the '799 patent.  For the

9    reasons the Court has explained, "network" is construed

10   to mean "Internet or other large scale wide area

11   network."  The Netflix system does not process informons

12   received from such a network.  The Netflix system does

13   not receive the movie titles it processes and recommends

14   over the Internet.  It does not filter informons in real

15   time.  Rather, it stores the movie titles in a

16   database.  Lycos argues that Netflix submits no evidence

17   whatsoever to evince the size or character of its

18   network connecting the database holding its movie

19   records to its Cinematch filter.

20        However, the parties have had discovery on the

21   relevant issues.  Lycos confirmed at the hearing

22   yesterday that it was not arguing that additional

23   discovery is necessary or appropriate under Rule 56(f)

24   before the motion for summary judgment was decided.  As

25   I said, the definition of "network" is the Internet or

1    something substantially similar in scope.  There is no

2    evidence that Netflix has a network approaching the

3    scale of the Internet.  A reasonable jury could not find

4    on the evidence -- on the admissible evidence, that

5    Netflix gets its movie information from a network as

6    I've construed that term.

7         Each of the claims requires that an informon be

8    received from the network.  It is not infringing for

9    network employees to send information about movies that

10   was not obtained from the Internet to a Netflix database

11   over the Internet.  In essence, there is a distinction

12   between using the Internet to transmit informons from

13   one Netflix location to another and the use of the

14   Internet as a source of informons that do not originate

15   with Netflix, which is what the '799 patent requires.

16        I also find that Netflix does not infringe the

17   '799 network limitation under the Doctrine of

18   Equivalents.  That possibility was not even argued at

19   the lengthy hearing yesterday.  In any event, any such

20   claim under the Doctrine of Equivalents is

21   unmeritorious.  There is a material difference between

22   taking information that is streaming on the Internet and

23   taking information from a static database.  The

24   inventors emphasize that significant distinction in

25   obtaining the '799 patent.

1          I also find that Netflix does not infringe the

2     '214 patent, which as I said earlier, is a continuation

3     of the '799 patent.  The claims at issue with regard to

4     the '214 patent are Claims 1 and 17.  Essentially the

5     arguments and analysis with regard to the '214 are the

6     same as the arguments and analysis concerning the

7     construction of "determine a value" under the '799

8     patent.

9          Both Claim 1 and Claim 17 of the '214 patent

10     require, quote:  "Combining the content based and

11     collaboration based value functions to generate an

12     output rating predictor of the informon for

13     consideration by the user."  For the purpose of

14     determining whether the Netflix system is infringing,

15     the Court must construe "value function."  Particularly

16     a question is whether this term requires numerical

17     outputs from content based and collaboration-based

18     filters to be mathematically combined in generating an

19     output rating predictor.

20          This is consistent with the focus on the term

21     "determine a value" in the '799 patent.  Insofar as both

22     analyses turn on the question of whether the term

23     "value" in the context of the patents means "numerical

24     value," and having in mind the nearly identical

25     specification, the analysis concerning the '214 patent

1    is essentially the same as that concerning the '799

2    patent.  The result is the same.  Accordingly, the term

3    "value," in the context of the '214 patent, as in the

4    '799 patent, is construed to mean "numerical value" and

5    generating an output predictor based on those values

6    requires a numerical calculation.

7         As explained earlier, the Netflix system does not

8    combine the outputs of the content-based IsOk filter and

9    the collaboration-based ItemSimilarity function in a

10   numerical calculation.  The rating for a particular

11   movie to a particular user is generated by the

12   ItemSimilarity function alone.  It is unaffected by the

13   operation of the IsOk filter.  Therefore, there is no

14   literal infringement of the '214 patent.

15        Lycos makes the same argument with regard to the

16   '214 patent that it made to the '799, that is, that true

17   and false are insubstantially different from 1 and 0 for

18   the Netflix system.  However, for the reasons discussed

19   earlier, this argument, under the Doctrine of

20   Equivalents, is not meritorious.

21        Blockbuster is entitled to summary judgment

22   regarding the '799 patent.  It does not infringe the

23   '799 patent literally or under the Doctrine of

24   Equivalents.  Again, Lycos alleges infringement of

25   independent claims 71, 94, 124 and 128.  All require the

1    accused system to filter informons received from a

2    network.  As described earlier, "network" is construed

3    as "the Internet or a large scale wide area network."

4         Each of the asserted independent claims of the

5    '214 patent requires that the system generate an output

6    rating predictor of the informon "for consideration by

7    the user."  I construe this term to mean -- for the

8    claim to mean that the prepositional phrase, "for

9    consideration by the user," modifies an informon, not an

10   output rating predictor.  Thus, the claim requires that

11   the system generate an output rating predictor for all

12   of those informons that will be presented to the user,

13   but not that the rating predictor itself need be

14   presented to the user.

15        While the language of the claim is ambiguous, the

16   specification includes an embodiment in which only the

17   informon and not the rating predictor is presented to

18   the user.  That's in Column 1 starting at Line 64

19   through Column 2, Line 2.  It also includes examples

20   where only the informon is presented.  That's in Figures

21   2 -- I'm sorry, 3 to 5, particularly clear to me in

22   Figure 4.  Accordingly, the claim is not being read to

23   require that the rating predictor be presented to the

24   user.  I have in mind the observation in *Pfizer*, 429 F.

25   3rd 1363 and 1374, that:  "A claim construction that

1  excludes a preferred embodiment is rarely, if ever,

2  correct."

3       For the purposes of this motion for summary

4  judgment, I construe "informon" to mean "the title of

5  the movie and related information," such as the actors,

6  the year it was made, and the directors, as I indicated

7  earlier.  For present purposes, it is undisputed that

8  Blockbuster combines content and collaborative-based

9  numbers to create a numerical rating.  However, only the

10  movies recommended as a result of that rating, and not

11  the score, are given to the user.

12       If the asserted independent claims of the '214

13  patent are construed to require that the output rating

14  predictor generated actually be presented to the user,

15  then the Blockbuster system does not infringe the Lycos

16  patent.  It is not clear from the claim language whether

17  "for consideration by the user" relates only to the

18  informon or to the numerical rating predictor as well.

19  Therefore, it is necessary, as it almost always is, to

20  look at the specification.

21       The specification of the '214 patent contains an

22  embodiment in which the user is presented informons, but

23  not the rating predictors.  It states:  That "the

24  integrated filter system compares received informons to

25  the individual user's query profile data, combined with

1    collaborative data, and ranks, in order of value,

2    informons found to be relevant.  The system maintains

3    the ranked informons in a stored list from which the

4    individual user can select any listed informon for

5    consideration.  In addition, each of the examples

6    depicted in Figures 3 to 5 in the '214 patent depict

7    systems in which the user is presented only with the

8    informon itself and not its rating."  As I said, it

9    seemed to me this was most clear in Figure 4.

10   Therefore, the intrinsic evidence is strong support for

11   Lycos's argument that the '214 patent does not require a

12   presentation of the rating predictor to the user.

13        The prosecution history also includes language

14   supporting a construction that does not require

15   presentation of a rating predictor to a user.  In the

16   preliminary amendment to the '214 patent, the inventor

17   stated that:  "In the preferred embodiment, an

18   individual user considers a filter-passed informon."  By

19   subsequently rating this informon, the individual user

20   adds data to the collaborative rating system, which will

21   generate an updated rating for the informon for future

22   users.  But as described in this embodiment, the

23   individual user does not receive the rating for the

24   informon.  In addition, later in the '214 preliminary

25   amendment, the inventors explain:  That "the rating can

1    be sent to the user's browser along with the title of

2    the informon to which it pertains."

3          Taken as a whole, the intrinsic evidence

4    concerning the "generate an output rating predictor of

5    the informon for consideration by the user" term in the

6    '214 patent indicates that the term should be construed

7    to require that the system generate an output rating

8    predictor, but not that the output rating predictor need

9    be presented to the user.  The claim language is

10   consistent with this construction.  Accordingly, as I

11   said, the term "generate an output rating predictor of

12   the informon for consideration by the user" is construed

13   to require that the system generate an output rating

14   predictor, but not that the rating predictor be

15   presented to the user.

16          (Pause.)

17          THE COURT:  Well, I've been going for about an

18   hour and a half and I realize that I forgot to place

19   something in its logical place, overlooking it, I think,

20   in my notes.  I need to explain why, given my

21   construction of "network," Blockbuster does not

22   infringe.

23          As I said, "network" is construed to mean the

24   Internet or some other large-scale wide area network.

25   Given this construction of the term "network," the

1    Blockbuster system does not infringe literally or under

2    the Doctrine of Equivalents.  While Blockbuster does

3    receive some informons from the Internet, those

4    informons are added to movie records that are stored in

5    a database and not filtered in real time from a data

6    stream.  Because of the inventors' emphasis that the

7    invention filters informons from a data stream and the

8    express definition of "network" is Internet in the

9    specification, a data system such as Blockbuster's does

10   not infringe.  It does not filter informons received

11   from a network as required by the '799 patent.

12        If I convert this into a memorandum, I'll put that

13   back where it logically belongs.

14        Therefore, in view of the way I've construed the

15   relevant terms, Blockbuster is not entitled to summary

16   judgment regarding literal infringement of the '214

17   patents.

18        So in conclusion, Netflix's motion for summary

19   judgment regarding both the '799 and '214 patents is

20   allowed and final judgment for Netflix will enter under

21   Rule 54(b).  Blockbuster's motion for summary judgment

22   with regard to the '799 patent is allowed.

23   Blockbuster's motion for summary judgment with regard to

24   the '241 patent is denied.  Therefore, a schedule will

25   have to be developed to give the parties an opportunity

1    to determine whether they can settle this case by

2    agreement, based on the rulings that I've made, and, if

3    not, to propose a schedule for concluding all discovery

4    and, if necessary, trying the case.

5        As I told you yesterday, I have a securities

6    matter, a hearing, scheduled for 3:00.  It's now 3:00.

7    I'm going to take a break to handle that and then I'll

8    see all of you afterwards.  If Lycos and Blockbuster

9    want to start talking -- while I'm not going to ask you

10   for any final answers on the schedule -- well, I'm not

11   going to ask you for more than when we ought to

12   reconvene, but you might want to first try to absorb the

13   implications of all of this and then have some

14   discussions.  I expect I'll be ready to see you again at

15   4:00 and not later than that -- or not much later than

16   that.

17       The way this all has been presented has been

18   excellent.  If you go to the Federal Circuit, we'll see

19   if I got it right.  But I feel like you taught me a

20   lot.  And although Lycos may be disappointed that my

21   tentative views didn't remain my final views, my

22   understanding of "network" was changed by the argument

23   yesterday.

24       So the papers were excellent.  The tutorial, which

25   is not part of the record, but it did teach me something

1    about streaming, I recall, it was helpful and the

2    arguments yesterday were helpful, too.

3          So the Court is in recess for about an hour.

4                (Ends, 3:00 p.m.)

5

6                C E R T I F I C A T E

7

8          I, RICHARD H. ROMANOW, OFFICIAL COURT REPORTER,

9    do hereby certify that the foregoing record is a true

10   and accurate transcription of my stenographic notes,

11   before Chief Judge Mark L. Wolf, on Tuesday, June 16,

12   2009, to the best of my skill and ability.

13

14

15

     /s/ Richard H. Romanow
16   _____
     RICHARD H. ROMANOW
17

18

19

20

21

22

23

24

25